### SUPREME FOREST WOODMEN CIRCLE v. GONZALEZ et al.

#### No. 3993.

Court of Civil Appeals of Texas. El Paso.

Oct. 24, 1940.

Rehearing Denied Nov. 14, 1940.

Henry, Bickett & Bickett, of San Antonio, for appellant.

L. B. Cooper, of Cotulla, for appellees.

PRICE, Chief Justice.

As plaintiff, Irene M. de Gonzalez, hereinafter called plaintiff, joined in the suit by her husband, recovered in the District Court of La Salle County a judgment in the aggregate sum of $1,358 ($108 of which represented penalty, and $350, attorneys' fees) against Supreme Forest Woodmen Circle, hereinafter referred to as defendant. The defendant duly perfected an appeal.

The cause of action asserted by plaintiff was founded on a certificate or policy of insurance in which Omero Gonzalez was the insured and plaintiff the beneficiary. The assured was a boy sixteen years of age. The certificate was dated January 1, 1939, and assured died on April 5, 1939. Defendant was at all relevant times a fraternal benefit society, in all things subject to and covered by the laws of Texas relating to such societies. It is deemed unnecessary to state the pleadings of the parties. Suffice it to say that all matters hereinafter discussed are within the compass of the pleadings.

Defendant prays for a reversal and rendition of judgment in its favor and in case that relief be denied, that the cause be reversed and remanded.

One proposition is relied upon to obtain the relief sought. This proposition is as follows: "Where the insured, in his application to a fraternal benefit society for a certificate of insurance, warranted that he was in good sound bodily health and mind and that he had no disease that would tend to shorten his life, and where the contract between the society and the member expressly provided that the certificate should be null and void if the member, at the time of the delivery thereof, was 'not in good health and free from any disease, and where the evidence conclusively showed that the member, a child of the age of sixteen years, was, at the time of the making of the application and at all times thereafter, sick and not in good bodily health and mind, in that he suffered from fits or convulsions, it was error for the trial court to render a judgment against the society on the certificate.'"

Granted the correctness of the facts forming the hypothetical basis of the proposition, defendant would be entitled to the relief sought. A question of fact only is presented by this appeal. That question is, Did a preponderance of the evidence establish a breach of the warranty set forth in the proposition? In other words, did the policy cover the death of the assured?

It is undisputed that the contract of insurance substantially contained the provisions as set forth in the proposition quoted. These provisions, as applied to the type of insurance here involved, are valid and must be recognized and vindicated in a proper case.

The burden of establishing that assured, at the time of the application or at the time of the delivery of the certificate, was sick and not in good bodily health and mind, was upon the defendant. National Life & Accident Ins. Co. v. Taree, Tex. Civ.App., 8 S.W.2d 291; American Central Life Ins. Co. v. Alexander, Tex.Com.App., 56 S.W.2d 864.

The proof of loss introduced in evidence by defendant contained the affidavit of plaintiff in which she stated the death of assured was caused by diarrhea. Certificate of the attending physician, Dr. Lightsey, was likewise a part of the proof of loss. This stated, among other matters, in substance, that he had been the medical attendant of deceased about two months;

that he had treated deceased for convulsions prior to the last illness; that the duration of the treatment was one day and the result thereof, recovery; that he attended deceased during the last illness for diarrhea, fever and convulsions; the day of his first and last visit, April 25, 1939 (this the last illness); the immediate cause of death, convulsions; that deceased was confined to his house or prevented from attending to business for one day; that prior to last illness deceased was subject to convulsions.

Dr. Lightsey testified on behalf of the defendant. He stated the only time he knew of deceased having a convulsion prior to his last illness was one time; that he had made a statement that the boy, in his opinion, was mentally unsound, but he was not sure of it; that he had not seen the first convulsion; that this convulsion was probably caused by something the boy ate.

On cross-examination the witness stated that he believed the statement that deceased was subject to convulsions was incorrect, but in the same sentence said, "Well, I don't know whether it was incorrect or not." Witness stated that it was his opinion the boy was feeble-minded, but he would not swear that he was feeble-minded. The opportunity the witness had to form an opinion as to the mental condition of deceased was apparently confined to seeing him on two or, at most, three occasions. Each time the boy was suffering acutely.

Defendant also called plaintiff as a witness. She said her son had been sick four or five days before his death; that he had not been sick for several years before that time; that her son did not have epileptic fits; that her son's mind was good; that she had signed a certain document. This document was in Spanish, and the following translation was introduced in evidence:

"May 26, 1939.

"Omero Gonzalez was my son. He was a boy, and died during the month of April, 1939, in Cotulla, Texas. Omero was 16 years of age at the time of his death.

"Omero never attended school at any time, because when he was approximately seven years of age, he had a fit which affected for the time his mind. After the fit he appeared to be in good health for many years. The last fit (or attack) which Omero had was one day approximately five years ago. Dr. Lightsey attended him.

"I have read the above, and it is true, except that the last fit he had was five months ago, and not five years ago. He did have one other fit five years ago.

"I hereby permit Dr. Lightsey to give information about the health of this young man."

Asked if the statements in the writing were true, she said she did not know, she had not had it explained to her and had not read it; that she had signed the paper giving Dr. Lightsey authority to testify as to her son's health; that she never made the statement, "because when he was approximately seven years of age he had a fit which affected his mind"; that the boy did not have a fit when he was seven years of age; that about five months before his death the boy had indigestion; that her son was in good health at the time he made the application.

On cross-examination she stated her son was sane and in good health all the time; that she had never read nor had explained to her the document in Spanish signed by her; if she had known what it stated she would not have signed same.

Plaintiff and Dr. Lightsey were the only witnesses testifying.

It is, perhaps, true that, plaintiff being a party to the litigation, the defendant was not bound by her testimony. However, the trial court was bound to consider same in passing on the facts—her statement in regard to the written admission might have been given credence. There was no contradiction thereof.

In our opinion, giving full credence to the testimony and considering same as a whole, it fails to establish the defense pleaded and relied upon—fails to establish the vital facts that either at the time of the application or the delivery of the policy the assured was not in good health as to both his mind and body. There was evidence that the boy could neither read nor write and that he stuttered.

Dr. Lightsey's testimony is entirely consistent, in our opinion, with the good health, mental and physical, of the boy at all relevant times. To his mind the convulsions did not necessarily evidence a bad state of health; they may have been caused by something he ate producing indigestion. The proof of loss was consistent with such a state of health, likewise.

█ It is the province of the trial court to pass on the evidence. There being no findings of fact or conclusions of law in

the record, it is our duty to attribute to the trial court such findings, if justified by the evidence, as would sustain the judgment. In our opinion, the judgment rendered was amply sustained by the evidence.

No error appearing in the record, it is ordered that the judgment be affirmed.